IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRY LEE MOORE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:14-cv-01525<br>Senior Judge Haynes |

# MEMORANDUM

Plaintiff, Terry Lee Moore, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the record (Docket Entry No. 13) contending, in sum, that the Administrative Law Judge ("ALJ") erred by failing to list all of Plaintiff's impairments and specify why some were non-severe, by failing to consider Plaintiff's "medically necessary use of a cane," and by failing to complete a function-by-function analysis in the RFC. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

The ALJ evaluated Plaintiff's DIB claim using the sequential evaluation process set forth at 20 C.F.R. § 416.920. (Docket Entry No. 10, Administrative Record at 14-16). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2008, the alleged onset date of disability. Id. at 16. At step two, the ALJ determined that

Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disease (COPD); anxiety disorder; and bipolar disorder. Id. These impairments "impose more than a minimal restriction in the claimant's ability to perform basic work activities." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 17-18. The ALJ considered Paragraph B mental impairments, but did not find that the requirements of Paragraph B were satisfied. Id. at 16-17. At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work with the following limitations: ability to lift and/or carry fifty pounds occasionally, and twenty-five pounds frequently; ability to sit, stand and/or walk for six hours in an eight hour workday; ability to understand, remember, and carry out simple instructions; ability to have occasional contact with the general public; and ability to adapt to infrequent change in the workplace. Id. at 18. At step five, the ALJ utilized the testimony of the vocational expert to conclude that although Plaintiff is not capable of performing past relevant work, he can perform certain other work. Id. at 25-27. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to disability benefits. Id. at 27. Following this decision, Plaintiff requested a review. Plaintiff's request for review was denied on May 20, 2014.

### A. Review of the Record

Plaintiff's alleged onset date of disability is September 1, 2008. Plaintiff's earliest medical record is dated June 20, 2008, from the VA. Id. at 421-425. Plaintiff had complaints of lower back pain, pain between his shoulder blades, leg pain, sore ankles, and "teeth are breaking

off like crazy." Id. at 422. Plaintiff said he was present for "management of cholesterol, tiredness, insomnia," and "monitoring of labs and medications." Id. Regarding his back pain, tests revealed that Plaintiff's straight leg raise was negative bilaterally, he was "able to walk on tip toes, heels and tandem, able to stand on either leg with relaxation of paraspinous muscles, finger to floor distance 4 inches on forward flexion." Id. at 423. The physician reported that Plaintiff's COPD was "controlled," without medication, and that he was "educated to quit smoking;" Plaintiff's eczema was "improved," with Triamcinolone, a topical cream that the physician continued. Id. Plaintiff requested a TENS unit for his disjointed knee, claiming "he has used [it] in the past, says he wants to use it again." Id. This unit was requested and issued. Id. at 437-444. Plaintiff was screened for depression and suicidal ideation, and although further psychological intervention was recommended, he refused. Id. at 425.

Plaintiff returned to the VA on January 9, 2009. Id. at 417-420. Plaintiff complained of pain in his "lower back, legs, ankles, [and] knee," and trouble sleeping, but reported that he was at the clinic for "management of cholesterol, tiredness, insomnia," and "monitoring of labs and medications." Id. at 417. Plaintiff was counseled regarding tobacco use and was encouraged to quit. Id. at 419-420.

On June 9, 2009, Plaintiff returned to the VA. Id. at 411-417. Plaintiff complained of pain in his calves and his elbow, and stated that he had been gaining weight and "he [had] too much stress going on his life," but did not report other issues. Id. at 412-413. The physician reported that Plaintiff's COPD was "controlled," without medication, and that he was "educated to quit smoking;" Plaintiff's eczema was "improved," so the physician continued Triamcinolone, a topical cream; and Plaintiff reported "partial relief with pain meds." for his disjointed knee. Id.

3

at 414-415. On June 11, 2009, Plaintiff underwent a CT scan. Id. at 201. The results were read on July 30, 2009, in connection with "an investigational drug study," and revealed "2 or 3 subpleural nodules, the largest being 1.5 cm." Id. It was recommended that Plaintiff obtain a repeat CT scan or a PET scan. Id.

On December 7, 2009, the results of a radiology exam were discussed with Plaintiff. Id. at 426. The "[b]ilateral examinations of the knees demonstrate[d] no evidence of fracture or dislocation. Bones, joints, and soft tissues are intact. There [was] no significant degenerative changes or joint effusion" and "[b]ilateral examinations of the knees [were] radiographically normal." Id.

Plaintiff received a letter from the Department of Veterans' Affairs on March 17, 2010. Id. at 202-203. It indicated that Plaintiff had made a "claim for an increase in [his] service connected compensation" on December 28, 2009. Id. at 202. In this letter, the VA determined that Plaintiff's "service connected condition" of eczema had worsened from 30% to 60%, and that his "Spondylolisthesis or Segmental Instability" and "Traumatic arthritis of the right knee" remained the same; this produced a rating of 80%. Id. The letter specifically stated that the VA "denied entitlement to the 100% rate because it wasn't shown that [Plaintiff was] unable to work as a result of [his] service connected disability/disabilities." Id. Part of Plaintiff's VA compensation was withheld until his severance pay was repaid. Id. at 203.

On December 7, 2010, Plaintiff went to the VA's Tennessee Valley clinic. Id. at 393-397. Plaintiff complained of "back pain," which he explained was "'always, ongoing' but that sometimes it is worse than others ... experienced as intense pelvic pressure. Muscle spasms." Id. at 395. Plaintiff had been taking Flexeril and Diclofenac, but his prescription had expired, and

4

the doctor now prescribed Methocarb, Tramadol, and Ethodolac. Id. In January 2011, Plaintiff was seen several times for a left groin condyloma. Id. at 268-279. Plaintiff underwent a procedure to remove it, and no complications were reported. On January 5, 2011, Plaintiff filed his DIB claim. It was denied on March 27, 2011.

On March 31, 2011, Plaintiff was evaluated by Dr. Stephen Goewey. Id. at 204-207. Plaintiff complained of "[b]ack pain, right knee pain, skin disorder, COPD, and restless legs." Id. Plaintiff "report[ed] no specific injury," and claimed his back pain dated to 1983, his right knee pain to 1971, his skin disorder to the 1980s, and COPD to 2006. Id. Plaintiff admitted to being a "two-pack-a-day smoker for 39 years," but showed "no accessory muscle use" in chest, "[c]lear breath sounds ausucltated bilaterally. No wheezes. No rales. No rhonchi," and was "not noted to be short of breath with examination." Id. at 205-206. Dr. Goewey noted "[s]uboptimal effort" by Plaintiff. Id. at 205. For instance, Plaintiff displayed "a right antalgic gait upon direct observation," but [w]hen observed upon the patient's discharge, it [was] not apparent. Tandem walk was done unremarkably and successfully." Id. at 206.

On the same day, Dr. Goewey completed a Medical Source Statement for Plaintiff. Id. at 208-213. Dr. Goewey restricted Plaintiff to lifting and carrying up to 50lbs continuously, and 51-100lbs frequently. Id. at 208. He limited Plaintiff to sitting, standing and walking for one hour at a time, with a maximum of sitting for six hours, standing for five hours, and walking for three hours in an eight-hour workday. Id. at 209. Plaintiff did not, at the time, use a cane. Id. Dr. Goewey restricted Plaintiff to operating a right foot control frequently, and to frequent exposure to dust, odors, fumes and pulmonary irritants, and extreme cold and heat. Id. at 210, 212. Dr. Goewey indicated that these limitations have lasted, or will last, for twelve consecutive months.

Id. at 213.

Dr. P. Stumb performed a review of Plaintiff's medical records on April 25, 2011. Id. at 214-218. Dr. Stumb found that the RFC should be reduced to lifting and carrying 50lbs occasionally and 25lbs frequently, and to sitting, standing, and walking up to 6 hours in a workday. Id. at 217. Dr. Stumb also opined that "[claimant's] statements of functional limitation are less than fully credible based of the VA [Medical Evidence of Record] and the ASE." Id. at 218. He also found that Plaintiff's skin diseases, eczema and condylomata, were both non-severe, as was his Restless Leg Syndrome. Id.

Dr. Stumb performed another review on May 26, 2011. Id. at 220-228. He noted Plaintiff's primary diagnosis as "[disorder] back," secondary diagnosis as "[left] groin condyloma," and other alleged impairments as "COPD; arthralgia, [Restless Leg Syndrome], eczema." Id. at 220. Dr. Strumb limited Plaintiff to occasionally lifting and carrying 50 pounds, frequently lifting and carrying 25 pounds, sitting, standing, and walking for up to six hours in a workday. Id. at 221-222. Further, Dr. Strumb found that the Medically Determinable Impairments of a left groin condyloma, back disorder, and eczema "could possibly cause some but not all of the symptoms and limitations alleged." Id. at 225. Dr. Strumb observed that the Medical Evidence of Record "shows no treatment for [Restless Leg Syndrome], muscle spasms, COPD, or knee problems." Id. at 225. He concluded that Plaintiff's allegations were "partially credible." Id.

On May 11, 2011, Dr. Jeffery Wade recorded the results of a lumbar spine exam. Id. at 219. Dr. Wade observed "[m]inimal grade 1 spondylolisthesis" and "mild degenerative disc changes." Id.

On June 3, 2011, Plaintiff went to the VA following a call to the Suicide Hotline on June 1, 2011. Id. at 383-385, 309. Plaintiff reported a history of depression and other mental issues, with some treatment "several years ago" that exacerbated his suicidal thoughts and treatment by a psychotherapist that "'seemed to help'" but was too expensive. Id. at 383. Plaintiff was repeatedly evaluated at the VA for depression and suicidal ideation, through December 2011.

On July 1, 2011, Plaintiff was evaluated for "[c]hronic shin swelling and pain." Id. at 260-261. At this time, Plaintiff "denie[d] any difficulty or worsening pain with ambulation" and stated "that he gets improvement with ambulating." Id. Further, he "denie[d] any numbness or tingling in his lower extremities" and "state[d] that he ha[d] normal strength in his lower extremities." Id. His only complaint was shin pain, which was "constant dull throbbing" and had been "present now for several weeks." Id. at 261.

On July 15, 2011, Plaintiff was evaluated at the VA's Tennessee Valley location. Id. at 402-403. Plaintiff reported that he smoked "2pks/day x 40 years. Chronic cough. Report[ed] having 'spots on [left] lung which can only be seen on CT.'" Id. at 402. The findings revealed "no significant abnormality" on the "pericardial silhouette, mediastinum and lungs." On October 22, 2011, Plaintiff reported "[c]hronic low back pain with radiation to both legs to ankle level," and an MR scan was conducted. Id. at 400-401. This scan revealed "disc degeneration with moderate central and mild lateral disc bulging with mild thecal sac compression" at L4-L5 and "mild central and lateral disc bulging with minimal thecal sac compression" at L5-S1. Id. at 401. A bone density study on March 7, 2012 revealed probable osteopenia. Id. at 397-398. In July, Plaintiff was also being evaluated for cholesterol issues. Id. at 287-292. Plaintiff was advised to exercise and change his diet, but he refused both, and instead asked for a prescription. Id. at 287.

On August 3, 2011, Plaintiff was seen by a VA psychiatrist, who noted that Plaintiff was frustrated with VA doctors, and was experiencing financial hardship despite his two pensions, noting that he had been denied for disability benefits. Id. at 368-373.

On August 29, 2011, Dr. Damarys Sanchez, Doctor of Psychology, completed a Mental Residual Functioning Capacity Assessment. Id. at 314-331. Dr. Sanchez indicated that Plaintiff had a "moderate limitation" in his ability to: "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and "respond appropriately to changes in the work setting." Id. at 314-315. In summary, Dr. Sanchez concluded that "[c]laimant can understand, retain, and carry out simple instructions. Claimant can consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision, and can cooperate effectively with public and co-workers in completing simple tasks and transactions." Id. at 316. On the accompanying Psychiatric Review Technique form, Dr. Sanchez indicated that Plaintiff had "bipolar affective disorder II," "anxiety [disorder] [not otherwise specified]," "cluster B traits/dependent traits," and "alcohol dependence." Id. Dr. Sanchez opined that Plaintiff would have "moderate" "restriction of activities of daily living," "difficulties in maintaining social functioning," and "difficulties in maintaining concentration, persistence, or pace." Id. at 328. In concluding this assessment, Dr. Sanchez wrote, "[b]ased on the totality of evidence, [claimant] is judged to be capable of independent functioning & there is no indication of a mental impairment that would meet/equal any listing at this time." Id. at 330.

On September 12, 2011, Dr. Homayoon Moghbeli evaluated Plaintiff's record as part of

8

his request for reconsideration. Id. at 332. Dr. Moghbeli concluded that although Plaintiff's reconsideration request noted "worsening of 'ankles and shins hurts to move or walk,'" "the intensity of the symptoms and their impact on functioning is not consistent with the totality of the evidence." Id. Dr. Moghbeli continued, "[t]he claimant's statement is partially credible. After reviewing the entire [Medical Evidence of Record], I concur with the RFC dated 05/26/2011." On September 15, 2011, Plaintiff's request for reconsideration was denied.

In October 2011, Plaintiff had an MRI that revealed arthritis in his low back. Id. at 365-366. The physician recommended a physical therapist, but Plaintiff refused, claiming "physical therapy had not given any benefit." Id. at 366. However, Plaintiff did request a referral to an orthopaedic specialist. Id.

On January 3, 2012, Plaintiff was evaluated for COPD and back pain. Id. at 344-347. Regarding the COPD, Plaintiff felt he was "breathing better on Tiotropium but deconditioned." Id. The doctor noted that Plaintiff had "no exercise and [continued] to smoke 2 pks/day." Id. As to his back pain, the doctor noted that Plaintiff experienced "low back pain and pain in both legs," "pain to toe level [bilaterally]," "[a]nkles do 'go out' on him occasionally." Id. At this point, Plaintiff was walking with a cane, which he had received in October 2011. Id.

In March 2012, Plaintiff again requested and received a TENS unit, after borrowing from his girlfriend and a friend. Id. at 340.

On September 11, 2012, Plaintiff was evaluated regarding COPD. Id. at 463-465. The doctor noted Plaintiff's family history of lung cancer and Plaintiff's continual two pack a day smoking, then counseled Plaintiff in quitting. Id. The doctor renewed prescriptions for Symbicort, Tiotroprium, and Albuterol, bronchodilators that treat COPD. Id. Plaintiff reported

9

no change at a follow up visit on October 30, 2012. Id. at 460-463.

## B. Conclusions of Law

A "disability" is defined by the Social Security Act as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the record made from the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of review is limited to determination of (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).

In this action, Plaintiff assigns errors to the ALJ's failure to describe all of Plaintiff's impairments and individually list why each is non-severe, to evaluate Plaintiff's "medically necessary use of a cane," and the failure to complete a function-by-function assessment in the RFC.

As to the first error, Plaintiff alleges that although he "has also been diagnosed with traumatic arthritis and eczema," the ALJ "failed to provide specific reasons" for not finding these

impairments to be severe. (Docket Entry No. 13, Plaintiff's Motion for Judgment on the Record, at 6-8). In addressing severe impairments, the ALJ wrote:

> It is recognized the claimant has alleged additional impairments (specifically, restless leg syndrome, eczema, knee pain, hip pain, history of groin condyloma, osteopenia, and dyslipidemia); however, when viewing the evidence as a whole, the weight of the evidence does not support a finding that these impairments, even if medically determinable, are severe in the sense that they result in additional functional limitations beyond those associated with the claimant's severe impairments.
>
> The record confirms that the claimant's eczema is improved with use of triamcinolone cream (January and June 2009, Exhibit 12F). Bilateral knee imaging in December 2009 was normal (Exhibit 12F). The consultive examiner noted that the claimant's knees flexed to 150 degrees with complaints of right knee tenderness without swelling or warmth (Exhibit 2F). Treatment has consisted of Ibuprofen (Exhibit 12F). The consultative examiner noted hip flexion to 100 degrees (Exhibit 2F). In January 2011, the claimant had a groin condyloma, which showed no evidence of malignancies (Exhibit 6F, 7F). Imaging during the period in question confirms osteopenia that has been treated with calcium, vitamin D and Fosamax. In June 2009, the claimant's dyslipidemia was considered controlled with medication. The record contains no objective diagnosis of restless leg syndrome.

(Docket Entry No. 10, Administrative Record, at 16). The ALJ did consider Plaintiff's other impairments, and provided reasons why his traumatic arthritis and eczema were not considered severe.

Plaintiff then cites the disability rating given by the VA, and alleges that "the ALJ has a duty to discuss [Plaintiff's] receipt of benefits and the conditions for which he receives VA disability benefits." (Docket Entry No. 13, Plaintiff's Motion for Judgment on the Record, at 7.) "While there is no consensus among the circuits as to how much weight another governmental agency's decision should receive, all circuits at minimum require the ALJ to consider the other agency's decision." Rothgeb v. Astrue, 626 F.Supp.2d 797, 809 (S.D. Ohio, 2009). In 2010, the

Eastern District of Tennessee court wrote that although "the VA's determination is not binding on the Agency[,] the Commissioner must at least consider the VA's disability determination. See, e.g., McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). In the Sixth Circuit the findings of another governmental agency are relevant and must be considered when they are supported by substantial evidence." McCormick v. Astrue, 2010 WL 1223933 (E.D. Tenn.). Here, the ALJ did not mention the VA disability rating at any point in the hearing decision, or during the hearing itself. However, the VA letter specifically states, "[w]e denied entitlement to the 100% rate because it wasn't shown that you are unable to work as a result of your service connected disability/disabilities." (Docket Entry No. 10, Administrative Record, at 202-203).

The ALJ is not required to defer to judgments made by another agency. "Evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p. But, "[b]ecause the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, [the ALJ is] not bound by disability decisions by other governmental and nongovernmental agencies." Id. In the VA's determination, Plaintiff is assigned 60% Eczema, 40% Spondylolisthesis or Segmental Instability and 10% Traumatic arthritis of the right knee percentages. (Docket Entry No. 10, Administrative Record, at 202-203). These do not add together to form a 110% disability, rather, the VA uses a combined rating table that produces an 80% disability. Id. The ALJ discussed Plaintiff's eczema, which was assigned 60% by the VA, but which the ALJ noted was "improved with use of triamcinolone cream." Id. at 16. The ALJ also discussed the physical effects of Plaintiff's spondylolistheis and traumatic arthritis, as quoted above. After evaluating Plaintiff's medical records and his own testimony at the hearing, the ALJ concluded that these

impairments were not severe. This decision is within the ALJ's discretion. Because she considered the impairments listed in the VA's disability determination letter, the ALJ's failure to specifically address the letter does not require remand.

Next, Plaintiff alleges that the ALJ failed to consider his "medically necessary use of a cane." (Docket Entry No. 13, Plaintiff's Motion for Judgment on the Record, at 8). The ALJ includes the use of a cane in her third hypothetical to the vocational expert. (Docket Entry No. 10, Administrative Record, at 57-58). The vocational expert's answer is based on the fact that the ALJ's hypothetical allowed for only "one hour each" of standing and walking and four hours of sitting in an eight hour workday. Id. The answer provided was that "this does not allow for a full eight hour work day, plus the use of a cane significantly erodes the occupational base as well, assuming arguing under (sic) that he could do a full range of sedentary. But not withstanding that this provides for less that eight hours in an eight hour work day." Id. The expert did not state that use of a cane would disqualify Plaintiff from all types of work, but does state that he would be able to perform "a full range of sedentary" work. The ALJ also discussed Plaintiff's use of a cane in her decision, citing the appointment at which Plaintiff received the cane and two appointments at which he seemed not to require it. Neither of the physicians who suggested work restrictions had the opportunity to evaluate Plaintiff after he began using the cane. Plaintiff did report, in July 2011, that his pain was improved with ambulation. Id. at 260-261. And in September 2011, one month before Plaintiff began using the cane, consultant Dr. Moghbeli reported that "the intensity of [Plaintiff's] symptoms and their impact on functioning is not consistent with the totality of the evidence." Id. at 332. The ALJ properly considered the medical record and her own observations of Plaintiff's behavior at trial, and chose not to include

a restriction based on Plaintiff's use of a cane in the RFC.

Next, Plaintiff asserts that the ALJ erred by failing to include a function-by-function assessment in the RFC. (Docket Entry No. 13, Plaintiff's Motion for Judgment on the Record, at 9). Plaintiff notes SSR 96-8p, which states "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The assessment of physical abilities includes "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR 404.1545(b). The ALJ's RFC included restrictions for sitting, standing, walking, lifting, and carrying, in addition to several mental restrictions. (Docket Entry No.10, Administrative Record, at 18). Although Plaintiff does not specify which restrictions he asserts were omitted, there are no restrictions in the RFC for pushing or pulling.

Neither of the consultant physicians restricted Plaintiff in pushing or pulling, nor has Plaintiff alleged that he suffers from a pushing or a pulling restriction. Plaintiff has not alleged any restriction he believes should be included in the RFC. "Although SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir. 2002) (see also Collette v. Astrue, 2009 WL 32929 (E.D. Tenn.)). The ALJ generally discussed the medical and other evidence that informed the RFC. As such, Plaintiff's claim fails.

For these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

An appropriate Order is filed herewith.

ENTERED this the 13th day of April, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge